Mr. Carr. Good morning, Your Honor. Jason Carr, appearing on behalf of the public. This is Randy Clayton Nelson. The sole contention in this post-conviction matter is that trial counsel rendered ineffective assistance to counsel. Specifically, the prosecutor, particularly during closing argument, introduced a raft of prejudicial argument and material that we contend swayed the jury's verdict. I think it's more probable than not that the jury's verdict was swayed by this material, because contrary to the Nevada Supreme Court's finding in this case, which although this hasn't been thoroughly briefed, I would contend, is a clearly erroneous assessment of the facts of the trial, this is a very close case. Indeed, there were four impartial third-party witnesses who came forward on their own volition to testify that they saw the truck right before this accident. This is a DWI with substantial bodily injury, horrific accident. These four individuals independently got on the stand and said, we saw this truck before the accident, and Randall Clayton Nelson was not driving the truck. It's unusual that you would have a case where there's a finding of guilt where four independent eyewitnesses would come forward and say that person did not do it. Counsel, the statement is made that the government had no direct witnesses that stated that he was the driver. Now, exactly what were the government's witnesses? The government had three witnesses who, much like the defense witnesses, saw the truck before the accident. There is nobody, including the defense witnesses, who saw the truck at the moment of impact. There is all the testimony from the defense and the government side was people who saw the truck sometime before the accident. And both sides put on reconstruction experts, right? Yes, Your Honor. There are three for the government, one for the defense. And interestingly enough, none of them really comport with each other, which is fairly typical in my experience of accident reconstruction testimony. But nonetheless, all the evidence is circumstantial to some extent because nobody saw the accident at the time of impact, nobody who lived through it or was able to see exactly who was driving at that time. Was Nelson thrown out of the truck or did he get out? What do we know about those facts? That's a point of contention that the accident reconstruction testimony was primarily delved into is what happened to Randall Nelson. The evidence is somewhat conflicting because this was an angular head-on collision. And the reasonable inference is that if you're driving and there's a head-on collision, the front of your body is going to hit the steering wheel and you're going to suffer chest impacts. That wasn't present in this case. What the defense witness testified to was that Randall Nelson was lying down, either with his head toward the passenger door or toward the driver's stick, the shift stick, that when the accident came, there was some rotation, yaw, and he was thrown out the passenger door, which is why he didn't suffer any chest contusions. But the prosecutor's witness has said something to the contrary. The expert testimony here is conflicting and not dispositive. Well, this is, you know, there's nothing unusual about the case in the sense that you had experts and eyewitnesses on one side saying he was the driver and defense witnesses on the other side and the jury chose to believe the State's case. Why is it no more complex than that? Well, Your Honor, the reason why I bring this up is that we are certainly not raising sufficiency of the evidence here. The State put forward sufficient evidence to support this conviction. The reason why I bring it up, though, is under the Strickland standard, I have a burden to prove that there's a reasonable probability that the jury verdict would have been different. And relevant to that analysis is the strength of the government's case. And indeed, the prosecutorial misconduct cases that are cited in my brief also talk about the fact that in instances such as vouching for witnesses or denigrating the defense witnesses, which occurred here, the closeness of the case is relevant to the analysis as to whether or not the conviction should be sustained. Can you tell me what the Court instructed on probable cause or reasonable doubt? The Court gave the standard Nevada jury instruction, and I neglected to put that in the excerpts of record. The Nevada and the Nevada Supreme Court instruction, the Nevada model jury instruction for reasonable doubt has been the subject of some litigation that I'm aware of. So that issue was not briefed, and I'm strained to say that I'm not prepared to address that in any detail. I apologize. Well, it seemed to me that it might have some relevance as to you claim that the government misbehaved in the instruction it gave in respect to beyond reasonable doubt. And as to whether clearly what they said today would be unconstitutional, and I suspect ever after Inouye Winship it was unconstitutional. But the question in my mind would be perhaps it wasn't a problem if, in fact, the Court had properly instructed and had said, now, what I tell you about the law is not what the prosecutor or the defense counsel tell you. So in context, I think it's important. Well, Your Honor, your question is a valid one with your observations. The law states that a jury instruction with a court-instructed jury can have an ameliorative effect over prosecutorial misconduct. Here we have the written instruction which, at least to the extent we can tell now, properly enunciated the reasonable doubt standard. That, under the law, can have some ameliorative effect, but it's not dispositive. It's a balancing test, as in most things in the law. But I can state that what would have been much more effective would have been a contemporaneous instruction from the judge after a timely objection. Your Honor, ladies and gentlemen of the jury, what the prosecution, how the prosecution just defined reasonable doubt is incorrect. I'd like to refer you to the instruction, this is how reasonable doubt is defined under the law. That would have had a much bigger impact on the jury than instructions that were read prior to closing argument. You have a sort of limited time left. We've read the briefs. We understand the contingents about misconduct. Assume for the purpose of the question I'm about to ask that misconduct did indeed occur. The district court in this case held an evidentiary hearing, didn't it? Yes. And the trial defense counsel appeared and testified. Correct. And said that he purposefully did not object for tactical reasons. Right? Yes. To some extent. That was his testimony. Yes. In his experience, and he apparently tried 20 or so felony cases, that it's better to respond to an argument than to interrupt an argument, even if the government is saying things that might be at variance with the facts, et cetera. So why can't we simply rely on that? It's an excellent, excellent point of contention to question, Your Honor. There's a tactical reason for engaging in certain trial conduct can be a valid defense against a Strickland standard if that tactical reason is predicated and grounded in sound law. And I would point this Court to Excerpt of Record 275 to 278, where I specifically asked trial counsel, is this misconduct? If the prosecution denigrates defense witnesses and denigrates the defense function, is that, in your estimation, misconduct, objectionable misconduct? And he says no. And he says this a variety of times. Even at the date of the evidentiary hearing in 2004, some 14 years after the trial, the trial counsel still has a misapprehension, does not understand the legal parameters of prosecutorial misconduct during closing argument. And it's understandable. It's a complicated area of the law. Prosecutor discretion is cabined severely in what kind of arguments they can make during closing argument. It's an intricate area of the law, but it's an area of the law where you have an onus as defense counsel to educate yourself. A tactical decision that's predicated on an erroneous impression of the law is not a true tactical decision and should not eviscerate a Strickland claim. And I'd like to save the rest of my time for rebuttal, if I may. Mr. Wilson. Good morning, Your Honors. My name is Dennis Wilson from the Attorney General's Office in Nevada, appearing on behalf of the Respondent Appellee in this case. Before you get started, let me ask just an informational question. I noticed it said that he's already paroled on a couple of the counts. How does that work in Nevada? And he's still serving a sentence on a 10-year sentence on some others? That's correct, Your Honor. They have what they call an institutional parole, that while they're in prison, they can be paroled on sentences they're serving. And then they continue on to their next sentence. I believe he has two 10-year consecutive sentences left to serve. Being paroled to the streets is quite a bit different than being paroled within the institution. So although he was sentenced to 120 years, he's on his last 20, coming up on his last two 10 consecutive. And so then he ultimately would be paroled to the street on these two 10s that are being served? Probably he'll be institutionally paroled on the next, on the one he's serving now, and then he'll come to the next 10. And then when he comes to the last 10, that's when they would decide if they should parole him to the street. Is that an unusual approach? I haven't seen it. Well, I think it is. You know, I think the prosecutors do, because people, it even gets more unusual when they start to serve their big sentences first, and they get paroled within the institution on that, and then they have a small sentence left at the end. Nevada's in a big debate right now about parole and overcrowding in prisons and those types of things. Anyway, what I would just one thing I'd like to talk about, this reasonable doubt instruction, just while we're kind of there. The issue is not, and was not, whether reasonable doubt was good or bad here. The issue was, was counsel ineffective in failing to object to the reasonable doubt instruction? That was the issue. And the Court said, because in 1990 we had one case, and the appellant cites numerous other cases subsequent to 1990, but the issue was, was he ineffective for not objecting? And they said, no, he wasn't ineffective. Later on, according to the later case law, there were problems with the Nevada reasonable doubt instruction. Ginsburg. Well, In re Winship would seem to cast considerable doubt on what the prosecutor said. Verrilli, Jr. And another issue we have is that issue is not before the Court. The issue before this Court is whether or not his trial counsel was ineffective when he didn't object to alleged prosecutorial misconduct. I think that's kind of a theme that runs through this case. We don't get to the merits of the matters. We just kind of discuss, was counsel ineffective, and we apply a Strickland standard. In this particular case, the Nevada Supreme Court found that the evidence against Mr. Nelson was strong. They made that finding. Counsel, in his brief, argues that this was razor thin. This case was not razor thin. The Nevada Supreme Court indicated there was much of the evidence showed that he was driving. That's the findings that they made, and those findings are entitled to deference. Well, I understand all that, but if, in fact, at the time, what the prosecutor said was unconstitutional and defense counsel should have known it, then he was ineffective. Is that not right? Well, I don't think they ever got to that issue. The Nevada Supreme Court was never given a chance to address that issue. The only issue they got to address was couched in terms of ineffective assistance of counsel. All of the issues raised by counsel. Well, that's what I'm saying is, was counsel ineffective for not understanding that what the prosecutor was saying was unconstitutional? And later, of course, in Sullivan v. Louisiana, they said that's structural error. And again, Your Honor, the Nevada Supreme Court never had a chance to address that issue head on. I don't understand that. Well, basically, it was just, was he ineffective or was he not ineffective? Those were the issues that were raised. Yes. And so they didn't go into that underlying issue. Well, according to Petitioner's counsel, the State court used the model instructions and no objection was raised about that. That's correct. The instruction that's been used forever there before it was changed. So what did the argument by the prosecutor comport with the instructions that were given, or do you know that? In fact, I think the district court found that they did. The Federal district court stated that at the time that it was made that the instruction was fine. That was what he said in his opinion or his ruling. Is the claim that trial defense counsel was ineffective for failing to object to the reasonable doubt standard or to offer an alternative before us? I don't believe it is, Your Honor. As you were talking and as Mr. Carr was talking, I went back to the index to the blue brief and all of the IAC claims are aimed at argument. And I think that may be one of the claims that was raised. Was he ineffective for not objecting to that? And the district court did say that at the time that the objection could have been made, that even if he had made the objection, in light of the existing law at that time, the objection would have been – would not have been sustained. Anyway, I just wanted to point out that there was a lot of evidence that this individual was driving, and that's really not the issue that we're here on. I mean, I can recite to you, if you look at the closing arguments of the prosecutor, right down the line, lists all the arguments in support of the fact that he was driving. She didn't have a drive. The passenger that he alleged was driving didn't have a driver's license. He always drove. There's just a ton of argument. There's injuries to his knees, dashboard injuries testified to by two individuals, two doctors, reconstructionists. There's injuries to his ankles caused by the pedals. There's no injuries like that on her. So the issue of who was driving was handled by the Nevada Supreme Court, and they said the evidence against him was strong. As far as the objections, I'd like to go back to another thing the Court brought up was, was it sound trial strategy not to object. Defense counsel talked at the evidentiary hearing about when he looks at a case, he figures out, should I object or not object? Am I going to succeed if I object? And if I object and don't succeed, then I'm kind of emphasizing this for the jury, and I don't want to do that. So he kind of makes that choice based on whether it's going to succeed or not. And that's what he said. So his decision not to object to those things in closing, he also said that he likes to, in his closing argument, he would then address those things that were raised that perhaps could have been objected to. He said at the evidentiary hearing that even if he had made those, even now he still wouldn't make those objections. The other thing that I want to look at in the 1 minute 40 seconds I have left is in order for trial counsel to be ineffective, you have to show that his objection would have been sustained. I mean, his – basically his objection, they would have found in favor of him for the objection. The Nevada Supreme Court found that there was no prosecutorial misconduct. Now, the basis of the objection, even if he had made the objection, the objection would have been found to be without merit. Failure to make meritless objections does not constitute ineffective assistance of counsel. So even if he had objected, the Nevada Supreme Court said there was no prosecutorial misconduct. That was the basis for all of the objections. So based on that, there's no prejudice, and the prejudice prong of Strickland is not met, and counsel and the appellant has failed to prove that counsel was not effective. Just in closing, Your Honor, Your Honors, I'd like to mention that the Nevada State Supreme Court's conclusion was not an unreasonable application of Supreme Court law. They looked at the case, they looked at the facts of the case, they addressed whether or not there was prejudice if the comments of the prosecutor were misconduct, and they said no. So based on that, I'd ask this Court to uphold or affirm the district court's ruling. Thank you. Thank you. Rovato, Mr. Carr. Government counsel mentioned some of the testimony of defense counsel. I'd like to point out very quickly on ER-262, defense counsel said this is as strong a defense case as he's ever had at trial. The evidence here was hardly overwhelming, which brings me to another point. How much deference do we owe the Nevada Supreme Court decision in this case? And if you look at the opinion, the order affirming, the order dismissing the appeal from the Nevada Supreme Court, on ER page 31, at the end of it, they drop a footnote talking about how appellate counsel in that case failed to supply them with any real record citation and basically wrote such a bad brief, for lack of a better word, that he was sanctioned, which partly would go into, partly explains why the Nevada Supreme Court found that there was no prosecutorial misconduct in this case, despite the raft, overwhelming majority of precedent out there that shows that the numerous instances of misconduct in this case were, in fact, erroneous as a matter of law and prejudicial. That partly the Nevada Supreme Court's decision to the contrary, which is an unreasonable application of law as applied to these facts, was predicated on perhaps the mistake of defense counsel to file a decent brief. The credibility of the witnesses in this case was crucial, pivotal to Nelson's defense. The prosecution, among other things, directly disparaged these witnesses by stating that by not coming to her and talking to the state, they somehow shouldn't be believed. That misconduct, I believe, is particularly important and should be looked at by this Court. Thank you very much. Roberts. Before you step away, I have a question. Yes. If you had to pick the worst statement made in final argument by the prosecutor, what would it be? You don't – ladies and gentlemen of the jury, you don't have to look for a reasonable doubt, because if there's a reasonable doubt out there, it's going to find you. You do not have to deliberate in this matter, she essentially said, because if you believe in your heart and minds right now that he's guilty, he's guilty. No need to further deliberate. Okay. Thanks. Thank you for your argument. Thank you both for your arguments. The case that's argued will be submitted for decision.
judges: B. Fletcher, Siler , Hawkins